Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

| IN RE: | CASE NO. 2:16-bk-20427 |
|---|---|
| MARSHALL WAITMAN NICHOLS, | CHAPTER 11 |
| Debtor in Possession. | |
| | JUDGE FRANK W. VOLK |

**MEMORANDUM OPINION AND ORDER
RESPECTING THE UNITED STATES TRUSTEE'S
MOTION TO DISMISS**

Pending are (1) the United States Trustee's Motion to Dismiss [Dckt. 29], (2) Clinton N. Nichols' motion to lift the automatic stay on an action pending in the Circuit Court of Clay County ("State Court Action") [Dckt. 15], and (3) Debtor Marshall Waitman Nichols' motion to extend the exclusivity period.

It is **ORDERED** that the Motion to Dismiss be, and hereby is, **GRANTED**. It is further **ORDERED** that the motions to lift stay and to extend exclusivity be, and hereby are, **DENIED AS MOOT.**

The Court has, as well, dismissed today the adversary proceeding associated with this matter. Consequently, there is no impediment to the State Court Action proceeding to resolution, at the discretion of the presiding circuit judge.

On October 18, 2016, the Court held an evidentiary hearing, after which the parties submitted their proposed findings of fact and conclusions of law. The Court now enters its findings of fact and conclusions of law.[1]

## I.

Mr. Nichols and his brother Clinton have certain real estate holdings. They are presently involved in very contentious litigation about those assets in the State Court Action. The State Court Action is aimed at dissolving and winding up the brothers' partnership, Nichols Land Company. The circuit judge has appointed special commissioners to manage the emergency affairs of the partnership.

On August 3, 2016, Mr. Nichols petitioned for relief under Chapter 11 of the Bankruptcy Code. His Summary of Assets and Liabilities lists $869,657 in assets. The stated liabilities are $312,321. On Schedule F, filed on August 3 and 5, 2016, only two unsecured creditors are listed. The first is the law firm of Lewis Law, in the amount of $2,500 for services rendered. The second is Clinton, in an unliquidated amount. On October 3, 2016, Mr. Nichols amended Schedule F to reflect two additional unsecured creditors, namely, David Karr, Jr., in the amount of $13,500 for services rendered, and Patricia Moore, for $71,131. Mr. Nichols asserts the debt owed to Ms. Moore, Mr. Nichols' sister-in-law, arises from a loan secured by a deed of trust owed to the Clay County Bank. That deed of trust is in Ms. Moore's name. Mr. Nichols lives

---

[1] Pursuant to 11 U.S.C. § 1112(b)(3), the Court finds "compelling circumstances" to warrant extension of the statutory period. The augmentation has facilitated an extended, but necessary, study of the record, the parties' submissions, and other materials required to arrive at a just, reasoned and thorough decision that balances the proper use of the insolvency system with a due regard for the jurisdiction and authority of the state judiciary. The dismissal of this proceeding also necessitated the Court's consideration of the continued exercise of jurisdiction over the associated adversary proceeding.

on the property. He is not in default on any unsecured loan obligations. He further testified that he does not owe Clinton any money.

Mr. Nichols' schedules list two secured creditors, namely, the Clay County Bank, which holds multiple liens, and Dan Sizemore. Mr. Nichols is current on all loan obligations to the Clay County Bank. The debt to Dan Sizemore arises from a real estate purchase contract between Mr. Sizemore and Main Street Alive, LLC, an entity with which Mr. Nichols is associated. It is currently in Chapter 7 bankruptcy. Mr. Sizemore is the only creditor listed in that Chapter 7 case.

Mr. Nichols reports pension, Social Security and rental income. His Schedule I and J reflect a negative net income of $3,176.62. Form 122B reflects net monthly rental income of $1,203.34. He lists current monthly expenses of $6,096.26 on Schedule J, which results in a negative monthly disposable income of $1,973.28. Mr. Nichols' 2015 federal income tax return reports a negative adjusted gross income of $31,712. Mr. Nichols' schedules are accurate, he does not have any disposable income to fund a Chapter 11 plan, and he cannot now, and will not be able in the future to, file a confirmable Chapter 11 plan.

The only source of rental income that Mr. Nichols currently receives – and which is not subject to a dispute with Clinton – is derived from 330 Main Street in Clay. The rent received is $400. Additionally, Mr. Nichols receives $100 in monthly rent for two lots beside 332 and 330 Main Street in Clay. Mr. Nichols also claims a one sixth interest in property described as "185 Church Street, Clay, WV." He receives rent of $1,100 thereon but no net income is derived from the property.

The remaining rental property listed on Mr. Nichols' Schedule A is in dispute with Clinton in the State Court Action. The leases on these properties are in the name of Nichols Land Company or C&M Nichols, LLC. Mr. Nichols testified that he transferred his partnership interest

3

in Nichols Land Company to a non-profit corporation, namely, The Lighthouse at Allies Landing, Inc. The entity was birthed in July 2014. Mr. Nichols is the Director of the non-profit corporation. He intends to continue to deposit any rental proceeds that he currently receives, or that he is entitled to receive, from 330 Main Street, Nichols Land Company or C&M Nichols, LLC, into the operating account for the non-profit corporation. (*See* Trans. at 49 ; *see id.* at 60-61, 62-64).

The only possible explanation offered by Mr. Nichols substantiating his ability to reorganize comes at page 93 of the transcript. At that point, he agreed with his counsel -- during a series of leading questions -- that (1) he could obtain $5,979 through C&M Nichols, LLC, and "take an owner draw [from the entity at] any time" or (2) "actually authorize a salary" for himself from The Lighthouse at Allies Landing, Inc. The assertions are speculative at the very least and, at their limit, may warrant an inference that the proposed funding mechanisms stretch traditional notions of corporate separateness.

Of greater moment are two additional concerns. The first involves Mr. Nichols' understanding of the reorganization process and the proper role of the bankruptcy system. First, when asked by his counsel whether he believed there was "a realistic probability of effective reorganization," he responded: "No. Yes, I think so." (Trans. at 97).

The second concern arises from the coaching of Mr. Nichols' during his testimony and whether he truly understands why he filed bankruptcy. This consideration is engendered by the extensive leading accomplished by his lawyer and, of greater concern, the continuous gesturing and non-verbal communication he received from his spouse during his testimony. In sum, Mr. Nichols appeared largely mystified respecting why the Chapter 11 device was either appropriate or necessary for his financial well-being or recovery.

For these reasons, the Court does not credit any testimony offered by Ms. Nichols.

4

Further, the Court has carefully selected those candid and supported statements of Mr. Nichols that are worthy of being credited, none of which include how he might file or fund a plan of reorganization.

## II.

The Court has jurisdiction pursuant to 28 U.S.C. §1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

Subsection 1112(b)(1) covers the matter of dismissal under these circumstances and provides pertinently as follows:

> (b)(1) . . . on request of a party in interest, and after notice and a hearing, the court shall . . . dismiss a case under this chapter . . .for cause . . .

11 U.S.C.A. § 1112(b)(1).  As noted by our court of appeals, "The right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith -- the absence of which is cause for summary dismissal." *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279 (4th Cir. 2007) (citing *Carolin Corp. v. Miller*, 886 F.2d 693, 702 (4th Cir.1989)).  The underlying reason for this ground of dismissal is obvious:

> As this court has explained, "a good faith requirement 'prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.'" The good faith standard also "'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with clean hands.'"

*In re Premier*, 492 F.3d at 279 (citations omitted).  Writing for the panel in *In re Premier*, Judge Wilkinson set forth the showing necessary for this branch of the "cause" justification under subsection 1112(b):

5

>In this circuit, a lack of good faith in filing a Chapter 11 petition requires a showing of "objective futility" and "subjective bad faith." The objective test focuses on whether "there exists the 'realistic possibility of an effective reorganization.' The subjective test asks whether a Chapter 11 petition is motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose. Subjective bad faith is shown where a petition is filed "to abuse the reorganization process," or "to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay."

*Id.* at 279–80.

If the movant demonstrates "cause" under subsection 1112(b)(1), the burden shifts to the nonmovant under subsection 1112(b)(2) to show "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." *Id.* The nonmovant is further obliged to demonstrate that

>(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
>(B) the grounds for . . . dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
>>(i) for which there exists a reasonable justification for the act or omission; and
>>
>>(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). It does not appear that subsection 1112(b)(2)(B) is germane to the matter under consideration.

### III.

The Court finds that the United States Trustee has established "cause" to dismiss this case under Section 1112(b).

Respecting the objective futility branch, Mr. Nichols' schedules indicate the necessity of proposing a payout of 100% to unsecured creditors. *See* 11 U.S.C. §1129(a)(7)(A)(ii). As noted, he has a negative disposable income. It is thus unclear how Mr. Nichols would fund a proposed plan with that statutory payout requirement. While proceeds from rental properties might be advanced as a funding mechanism, the Lighthouse at Allies Landing, Inc., has charge of those receipts. It is thus not possible, or at least highly improbable, that Mr. Nichols will be able to propose a confirmable Chapter 11 plan. There is thus no realistic possibility of an effective reorganization.

Respecting the subjective branch, the Court is constrained to conclude the petition was motivated by the improper purposes of (1) delaying the State Court Action, (2) shopping for a more favorable forum, and/or (3) providing leverage to achieve the sought-after settlement of the dispute between Mr. Nichols and his brother Clinton. This finding is supported, *inter alia*, by Marshall's testimony and, earlier in the case, the arguments of his counsel during the first hearing in this matter on September 16, 2016, relating to a motion to lift stay.

Counsel expressed during the September 16, 2016, hearing his view that the judicial officer assigned to the State Court Action was not impartial, lacked jurisdiction, and was burdened with a conflict to interest. (Record. of Hrg. at 31:46 to 32:45). He also expressed dissatisfaction with how the circuit judge in the State Court Action was handling the case. (*See, e.g.*, Record. of Hrg. at 37:20 to 38:50). Counsel also stated his belief that a conflict of interest burdens one of the three commissioners appointed by the circuit judge to handle the details of the windup. (Record. of Hrg. 40:40 to 43:00). The Court notes as well that, during Mr. Nichols' testimony in the evidentiary hearing in this matter, he stated as follows when asked by counsel for the United States Trustee if "one of the primary reasons for the [Chapter 11] . . . filing was the" State Court Action:

7

"A. Well, he's [Clinton's] . . . in with the judge and stuff up there. So that was one of the reasons there." (Trans. at 29).

The Court, accordingly, **CONCLUDES** that the United States Trustee has proven "cause" under subsection 1112(b)(1). The Court additionally **CONCLUDES** that Mr. Nichols has presented no evidence to support a finding that there are unusual circumstances establishing that dismissing the case is not in the best interest of creditors or that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time.

Based upon the foregoing discussion, it is **ORDERED** that the Motion to Dismiss be, and hereby is, **GRANTED**.